| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>               Plaintiff,<br><br>v.<br><br>EGHBAL SAFFARINIA (a/k/a<br>"EDDIE SAFFARINIA"),<br><br>               Defendant. | Crim. Action No. 19-216 (EGS) |

**MEMORANDUM OPINION**

Defendant Eghbal Saffarinia ("Mr. Saffarinia"), a former Assistant Inspector General for the United States Department of Housing and Urban Development's Office of Inspector General ("HUD-OIG"), faces criminal charges arising from alleged falsifications and omissions in his annual public financial disclosure reports pursuant to the Ethics in Government Act of 1978, 5 U.S.C. App. 4 §§ 101-11. Mr. Saffarinia has been charged in a seven-count indictment for engaging in a scheme to conceal material facts, making false statements, and falsifying records. Following the government's production of approximately 3.5 million pages with detailed production logs, Mr. Saffarinia moves for a bill of particulars. Upon careful consideration of the motion, the response, the reply thereto, the applicable law, and for the reasons explained below, the Court **DENIES** Defendant's Motion for Bill of Particulars.

## I. Background

The following allegations, which Mr. Saffarinia accepts as true for this motion and intends to disprove at trial, are drawn from the indictment. *See* Def.'s Mem. of Law in Supp. of Def.'s Mot. for Bill of Particulars ("Def.'s Mem."), ECF No. 14-1 at 3 n.1.[1] Between 2012 and 2017, Mr. Saffarinia served as the Assistant Inspector General for Information Technology in HUD-OIG, and then as the Assistant Inspector General for Management and Technology. Indictment, ECF No. 1 at 2 ¶ 3. Mr. Saffarinia oversaw HUD-OIG's Office of Management and Technology, which was reorganized as HUD-OIG's Office of Information Technology ("IT"). *Id*. As a member of the Senior Executive Service ("SES"), Mr. Saffarinia had a "legal duty" to annually submit public financial disclosure reports pursuant to the Ethics in Government Act.[2] *Id*. at 2 ¶ 4. Such disclosures were filed using

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

[2] The Ethics in Government Act "requires government officials, including Members of Congress, to file annual disclosure statements detailing, with certain exceptions, their income, gifts, assets, financial liabilities and securities and commercial real estate transactions." *United States v. Oakar*, 111 F.3d 146, 148 (D.C. Cir. 1997) (citing 5 U.S.C. App. 4 § 102; *United States v. Rose*, 28 F.3d 181, 183 (D.C. Cir. 1994)). The Act created the Office of Government Ethics ("OGE") as a separate office within the Executive Branch. 5 U.S.C. App. 4 § 401(a). OGE provides "overall direction of executive branch policies related to preventing conflicts of interest on the part of officers and employees of any executive agency[.]" *Id*. § 402(a).

the Office of Government Ethics Form 278 ("OGE Form 278"). *Id.*

Mr. Saffarinia also served as HUD-OIG's Head of Contracting Activity, overseeing "procurement review and approval processes, including IT contracts[.]" *Id.* at 2 ¶ 5. He was given "access to contractor proposal information and source selection information[.]" *Id.* In that position, Mr. Saffarinia had a "legal duty under governing regulations," requiring him to take the following actions:

> [1] to disclose actual and potential conflicts of interest and [2] to not solicit and accept anything of monetary value, including loans, from anyone who (a) has or is seeking to obtain government business from HUD-OIG, (b) conducts activities that are regulated by HUD-OIG, and (c) has interests that may be substantially affected by the performance or nonperformance of [his] official duties.

*Id.* at 2-3 ¶ 5.

Mr. Saffarinia, however, did not disclose the nature of his relationship with Person A. *Id.* at 3-4 ¶ 11-12. Neither did Mr. Saffarinia disclose his loans and payments in excess of $10,000 from Person A and his neighbor. *Id.* 17 ¶ 75. Mr. Saffarinia, Person A, and Person B were friends from college who emigrated to the United States from the same country. *Id.* at 3 ¶ 9. From 2012 to 2016, Mr. Saffarinia concealed his financial relationship with Person A, who was the owner of an IT company that contracted with HUD-OIG ("Company A"). *See id.* at 3 ¶ 6; 3-4 ¶¶ 11-12. Mr. Saffarinia "steer[ed] government business and

disclos[ed] confidential government information" to Person A and Company A. *Id*. at 4 ¶ 12. Mr. Saffarinia omitted an $80,000 promissory note that he owed to Person A in his OGE Forms 278, failing to report all liabilities in excess of $10,000 in those forms. *See id*. at 2 ¶ 4; 4 ¶ 12.

In 2012, Mr. Saffarinia caused Company B to enter into a business partnership with Person A and Company A, and Company A eventually served as one of Company B's subcontractors on a multi-year, $30 million IT services contract for HUD-OIG. *Id*. at 6 ¶ 18. HUD-OIG approved additional funding in the amount of $78,000 for Company A's subcontract with Company B in 2013. *Id*. at 10 ¶ 42. Between 2012 to 2015, Company A received more than one million dollars as Company B's subcontractor. *Id*. at 9 ¶ 36. Mr. Saffarinia gave competitive advantages to Person A and Company A for a certain government contract between 2013 and 2014. *Id*. at 14 ¶ 61.

Mr. Saffarinia hired his friend and former business partner, Person B, as the head of HUD-OIG's new predictive analytics department. *Id*. at 3 ¶¶ 7, 9. At Mr. Saffarinia's direction, Person B became the sole member of a technical evaluation panel for a government contract. *Id*. at 16 ¶ 72. For that contract, Person B rejected thirteen bid proposals, and HUD-OIG awarded it to Person A and Company A. *Id*.

From 2013 to 2014, Mr. Saffarinia caused HUD-OIG to

4

recompete Company B's IT service contract, and he caused Company C to enter into a business partnership with Company A in order for both companies to submit a joint bid for the recompete contract. *Id*. at 11 ¶ 47. Mr. Saffarinia directed his subordinate to meet with Person A and the owner of Company C for the formation of the partnership and the submission of the joint bid. *Id*. at 12 ¶ 50. HUD-OIG awarded the recompete contract, which was worth more than $17 million, to Company C. *Id*. at 11 ¶ 47. Company A became a subcontractor for Company C, and Company A was expected to receive roughly nine million dollars. *Id*.

On June 25, 2019, a federal grand jury returned a 19-page, 78-paragraph, seven-count indictment charging Mr. Saffarinia with concealing material facts, in violation of 18 U.S.C. §§ 1001(a)(1) and 2 ("Count I"); making false statements, in violation of 18 U.S.C. §§ 1001(a)(2) and 2 ("Counts II-IV"); and falsifying records, in violation of 18 U.S.C. §§ 1519 and 2 ("Counts V-VII"). *Id*. 3-18 ¶¶ 10-78. Count I asserts that Mr. Saffarinia "did knowingly and willfully falsify, conceal, and cover up by trick, scheme, and device material facts . . . by violating his legal duty to disclose a financial relationship with Person A, including on his annual OGE Forms 278." *Id*. at 4 ¶ 11. Listing Mr. Saffarinia's 2014, 2015, and 2016 publicly-filed OGE Forms 278, Counts II through IV assert that Mr. Saffarinia "did willfully and knowingly make and caused to be

made material false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States, namely, HUD and OGE[.]" *Id.* at 17 ¶ 76. Finally, Counts V through VII list the same three separate OGE forms, alleging that Mr. Saffarinia "knowingly concealed, covered up, falsified, and made false entries in a record, document, and tangible object" when he caused those forms to be filed "with HUD and OGE." *Id.* at 18 ¶ 78.

On June 28, 2019, this Court issued a Standing Order requiring the government to produce any evidence in its possession that is favorable to Mr. Saffarinia and material to either his guilt or punishment. *See generally* Standing Order, ECF No. 11 at 1 (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 153-55 (1972)). On the same day, the Court granted the parties' consent motion for a Protective Order governing discovery. *See* Min. Order of June 28, 2019. As early as June 2019, the government produced more than one million records to Mr. Saffarinia's counsel. Gov't Opp'n, ECF No. 15 at 2. That production included, among other things, virtually all of the investigative case file from the Federal Bureau of Investigation ("FBI"), interview reports, agent notes, and witnesses' statements pursuant to the Jencks Act, 18 U.S.C. § 3500. *Id.* at 2-3. The government's production,

while voluminous, was sent to defense counsel in an "organized and navigable digital format (specifically, in an electronic, 'load ready' format), with bates-stamping and detailed discovery production logs that include[d] all of the metadata for the records." *Id.* at 3. The government gave Mr. Saffarinia an "explicit roadmap" during two reverse proffer sessions in February 2018 and June 2019,[3] and the parties engaged in further discussions and telephone conversations about the charges. *Id.* at 11. Given its continuing discovery obligations, the government has provided Mr. Saffarinia with nearly 3.5 million pages of discovery. Def.'s Mem., ECF No. 14-1 at 10.

Dissatisfied, Mr. Saffarinia filed a motion for bill of particulars on July 5, 2019. *See* Def.'s Mot. for Bill of Particulars ("Def.'s Mot."), ECF No. 14 at 1. Mr. Saffarinia seeks an order compelling the government to produce a bill of particulars addressing three points: (1) the legal duties that form the basis of the concealment of material facts charged under 18 U.S.C. § 1001 with respect to Count I; (2) the "governing regulations" that required Mr. Saffarinia to disclose

---

[3] A "reverse proffer" has been described as a session with the government where "the defendant remains silent" and "the prosecutor explains how the government would convict the defendant at trial and may choose to reveal more information than required by the discovery rules." Stephanos Bibas, *Incompetent Plea Bargaining & Extrajudicial Reforms*, 126 Harv. L. Rev. 150, 167 (2012).

his conflicts of interest as to Count I; and (3) the investigation or matter Mr. Saffarinia allegedly impeded, impaired, or obstructed under 18 U.S.C. § 1519 with respect to Counts V through VII. *Id.* The government filed its opposition brief on July 7, 2019, *see* Gov't Opp'n, ECF No. 15 at 1-13, and Mr. Saffarinia filed his reply brief on July 11, 2019, *see* Def.'s Reply, ECF No. 16 at 1-10. The motion is ripe and ready for the Court's adjudication.

## II. Legal Standard

Federal Rule of Criminal Procedure 7(c) requires an indictment to "be a plain, concise and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1); *see also United States v. Edmond*, 924 F.2d 261, 269 (D.C. Cir. 1991) ("[T]he function of a federal indictment is . . . not how the government plans to go about proving [those essential facts]."). Under Rule 7(f), a "court may direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f). "A bill of particulars can be used to ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges." *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987). "Yet if the indictment is sufficiently specific, or if the requested information is

available in some other form, then a bill of particulars is not required." *Id.*

"The determination of whether a bill of particulars is necessary 'rests within the sound discretion of the trial court' and will not be disturbed absent an abuse of that discretion." *United States v. Mejia*, 448 F.3d 436, 445 (D.C. Cir. 2006) (quoting *Butler*, 822 F.2d at 1194). "[A] bill of particulars is not a discovery tool or a device for allowing the defense to preview the government's evidence." *United States v. Brodie*, 326 F. Supp. 2d 83, 91 (D.D.C. 2004); *see also United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985) ("A bill of particulars, unlike discovery, is not intended to provide the defendant with the fruits of the government's investigation.").

## III. Analysis

In moving for a bill of particulars, Mr. Saffarinia makes four primary arguments. First, Mr. Saffarinia contends that a bill of particulars is necessary for him to prepare his defense and to prevent unfair surprises at trial. Def.'s Mem., ECF No. 14-1 at 6. Mr. Saffarinia's next argument is that the obstruction allegations in Counts V through VII are "threadbare" and "multiplicitous" because the indictment fails to describe the "investigation" or "matter" that he allegedly intended to impede, influence, or obstruct. *Id.* at 7. Mr. Saffarinia points out that he is left guessing "whether the 'matter' supporting

the false statements charges differs from the 'matter' supporting the obstruction charges." *Id*. at 8. Next, Mr. Saffarinia argues that Count I of the indictment fails to explain what "legal duty" triggered his alleged failure to disclose information in violation of 18 U.S.C. § 1001(a)(1). *Id*. at 9. Mr. Saffarinia's fourth argument is that the "massive discovery" in this case underscores the need for a bill of particulars because he will be "left to spend months of valuable trial preparation time sifting through millions of pages of documents trying to figure out what, exactly, he stands accused of." *Id*. at 11.

The government responds that the indictment supplies Mr. Saffarinia with the essential facts and elements of the crimes charged, and that Mr. Saffarinia's motion "improperly seeks the disclosure of the government's legal theory and the specific acts it will prove at trial in support thereof." Gov't Opp'n, ECF No. 15 at 4. The government argues that "[t]he indictment's specificity, coupled with the substantial discovery already provided (including an early production of *Jencks* material), is more than sufficient to place [Mr. Saffarinia] in a position where he understands the charges and can prepare a defense to them." *Id*. at 5. The government contends that the indictment provides Mr. Saffarinia with notice of the matters and investigations that he obstructed for the § 1519 charges because

it names both HUD and OGE as the relevant agencies, it describes the OGE forms that he allegedly falsified, and those allegations are incorporated in Counts V through VII. *Id.* at 6. With respect to the § 1001 charge, the government contends that the indictment indicates that Mr. Saffarinia had a legal duty to disclose his relationship with Person A because Mr. Saffarinia was a high-ranking HUD-OIG official, the Head of Contracting Activity, and an SES member. *Id.* at 7. The government's next argument is that Mr. Saffarinia's motion is an attempt to "use a bill of particulars as a discovery device and to preview the government's trial theories[.]" *Id.* at 9. Finally, the government argues that Mr. Saffarinia's requested information "is available to [him] through the indictment itself, the discovery provided by the government, and the information previously furnished to [him] and his counsel[.]" *Id.* at 12.

Before turning to the parties' arguments as to Mr. Saffarinia's three requests, the Court first addresses the substantial discovery in this case.

### A. The Government Has Produced Substantial Discovery

It is undisputed that the discovery in this case is voluminous. *See, e.g.*, Def.'s Mem., ECF No. 14-1 at 10-11; Gov't Opp'n, ECF No. 15 at 2-3. The government has produced more than one million records and 3.5 million pages to Mr. Saffarinia. *See* Def.'s Mem., ECF No. 14-1 at 10; *see also* Gov't Opp'n, ECF No.

15 at 2. In the government's view, Mr. Saffarinia "will [not] be forced to find a proverbial needle in a haystack" because the government has provided him with organized and detailed discovery production logs, Bates-stamping, and digital formatting. Gov't Opp'n, ECF No. 15 at 2. The government further provided Mr. Saffarinia with seven specific categories of documents to assist defense counsel with the discovery review. *Id.* at 2-3.[4] Mr. Saffarinia neither challenges the government's production nor disputes the government's efforts to make defense counsel's discovery review manageable. *See generally* Def.'s Reply, ECF No. 16.

Notwithstanding the pre-indictment negotiations, voluminous discovery, and subsequent discussions between the parties in this case, the parties had two separate and lengthy reverse proffer sessions, Mr. Saffarinia attended one of them, and the

---

[4] The government has produced the following seven categories of documents: (1) "Nearly all of the FBI's investigative case file, including interview reports, agent notes, and an early production of *Jencks* material"; (2) "A voluminous amount of material from HUD-OIG, including the e-mail accounts for the defendant and Persons A and B for the relevant period"; (3) "The subpoena returns (with supplements)"; (4) "The defendant's tax returns and financial records"; (5) "A portion of the defendant's administrative records (including ethics training and financial disclosure forms and certifications)"; (6) "Business and financial records for Person A and Company A, and business records for two other vendors (referred to as Companies B and C in the indictment)"; and (7) "HUD-OIG contract information for the contracts at issue." Gov't Opp'n, ECF No. 15 at 2-3.

government explained its theory of the case to Mr. Saffarinia's
counsel in each session. *See* Gov't Opp'n, ECF No. 15 at 3; *see
also* Def.'s Reply, ECF No. 16 at 8. It is uncontested that both
sessions and the negotiations covered the following information:

> [1] discussions of key interview reports and
> documents (including references to
> exculpatory information); [2] an analysis of
> the interactions between [Mr. Saffarinia] and
> his associates (Persons A and B); [3] a
> discussion of [Mr. Saffarinia's]
> legal obligations to disclose information on his
> public financial disclosure forms (OGE Forms
> 278); and [4] a summary of the HUD-OIG
> procurement process and the contracts at
> issue. Prior to [the] indictment, the
> government also disclosed its proposed charges
> pursuant to 18 U.S.C. § 1519 and, during that
> discussion with [defense] counsel, explained
> how the [Mr. Saffarinia's] conduct impeded and
> impaired the proper administration of HUD-OIG
> and OGE.

Gov't Opp'n, ECF No. 15 at 3. According to the government,
"[t]he elements of the crimes that the government anticipated
charging, and the accompanying jurisdictional and legal issues,
were matters of prolonged oral and written communications
between the parties." *Id.* at 3 n.2. Although Mr. Saffarinia
takes issue with the government's statements about the parties'
discussions, he argues that the parties' disagreement is
"irrelevant." Def.'s Reply, ECF No. 16 at 8. Without citing to
any authority, Mr. Saffarinia contends that "if the government
**did** communicate the particulars that Mr. Saffarinia seeks, it
will suffer no prejudice from repeating its prior disclosures

here." *Id.* at 9 (emphasis in original).

Contrary to Mr. Saffarinia's contention, the government does not have an obligation to repeat its previous disclosures. "A bill of particulars is meant to allow [Mr. Saffarinia] to properly prepare for trial, not provide a method to force the prosecution to connect every dot in its case." *United States v. Han*, 280 F. Supp. 3d 144, 149 (D.D.C. 2017) (citing *Butler*, 822 F.2d at 1193-94). While Mr. Saffarinia may request additional information through a bill of particulars, *see* Fed. R. Crim. P. 7(f), he may not use it as a discovery mechanism, *see United States v. Ramirez*, 54 F. Supp. 2d 25, 29 (D.D.C. 1999). As Judge Huvelle observed in *United States v. Brodie*, "a bill of particulars is not a discovery tool or a device" and the government is not "required to prove how or when the [alleged crime] was formed, the details of any meeting or when the defendant [engaged in the alleged crime]." 326 F. Supp. 2d at 91. Furthermore, the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has made clear that a bill of particulars is unwarranted where, as here, "the requested information is available in some other form." *Butler*, 822 F.2d at 1193; *see also United States v. Sanford Ltd.*, 841 F. Supp. 2d 309, 316 (D.D.C. 2012) (finding that "no bill of particulars [was] warranted [there] because the superseding indictment and other information available to the defendants

14

through discovery provide[d] sufficient detail regarding the nature and the details of the offenses charged to afford the defendants a full and fair opportunity to prepare for and avoid surprise at trial").

In this case, Mr. Saffarinia's request for additional details about the charges in the indictment—details of which the government has already provided to him—is improper. An "indictment's failure to detail the government's case against the defendants alone does not trigger a requirement for the government to produce a bill of particulars so long as the information requested by the defendants has been made available in another form[.]" *United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 147-48 (D.D.C. 2015) (denying motion for bill of particulars where there were reverse proffers and the government provided voluminous discovery to defendants).[5] The government argues—and the Court agrees—that the information Mr. Saffarinia seeks is available in other forms through the discovery in this

_____

[5] Mr. Saffarinia attempts to distinguish *Mosquera-Murillo* from this case, arguing that "the defendant in that case had moved for the bill [of particulars] a year after the indictment and after the government had provided 'additional clarity as to [the] government's specific allegations.'" Def.'s Reply, ECF No. 16 at 7 n.2 (quoting *Mosquera-Murillo*, 153 F. Supp. 3d at 148). Those facts, however, are of no consequence. In finding that there was voluminous discovery, the court in *Mosquera-Murillo* relied on the guiding principle in *Butler* that a bill of particular is not required if the requested information is available in another form. *Mosquera-Murillo*, 153 F. Supp. 3d at 148 (citing *Butler*, 822 F.2d at 1193-94).

case. *See* Gov't Opp'n, ECF No. 15 at 9. Given the substantial discovery here, the Court therefore finds that Mr. Saffarinia is not entitled to a bill of particulars to prepare his defense and to avoid any surprises at trial. *See Mejia*, 448 F.3d at 446 (concluding that "if the defendants felt ambushed, it was not because the government was lying in wait, but because the defendants were not looking" at the pretrial witness statements provided by the government).

### B. The Indictment and Discovery Provide Mr. Saffarinia With Notice of the Matters and Investigations at Issue

Mr. Saffarinia's argument—that the government fails to identify the investigation or matter underlying the three obstruction counts—is unavailing. *See* Def.'s Mem., ECF No. 14-1 at 7. With respect to Counts V through VII, "[t]he plain language of 18 U.S.C. § 1519 criminalizes a defendant's efforts to obstruct 'the investigation or proper administration of any matter' within the jurisdiction of [any department or agency of the United States, including] the FBI, 'or in relation to or contemplation of any such matter.'" *United States v. Moyer*, 674 F.3d 192, 206 (3d Cir. 2012) (quoting 18 U.S.C. § 1519). "By the plain terms of § 1519, knowledge of a pending federal investigation or proceeding is *not* an element of the obstruction crime." *United States v. Gray*, 642 F.3d 371, 378 (2d Cir. 2011) (emphasis added). And "[Section] 1519 does not require the

existence or likelihood of a federal investigation." *Id*. at 379.

To support its position, the government relies on *United States v. Knight*, No. 12-cr-0367, 2013 WL 3367259, at *4 (E.D. Pa. July 3, 2013). *See* Gov't Opp'n, ECF No. 15 at 6. *Knight*, a decision left unaddressed by Mr. Saffarinia, is persuasive. *See* Def.'s Reply, ECF No. 16 at 6-7. In that case, the defendants sought additional information about their alleged obstructive conduct under § 1519 beyond the allegations in the indictment. *Knight*, 2013 WL 3367259, at *4 (emphasis added). The court found that the indictment tracked the language of § 1519. *Id*. at *5. The court explained that "the Government need not provide specifics on how the obstructive conduct was intended to impede the grand jury or any investigation." *Id*. at *4. Because the indictment set forth which documents the defendants had allegedly falsified and fabricated, the court reasoned that the defendants were not entitled to "information regarding obstructive conduct *beyond* what [was] alleged in the Indictment[.]" *Id*. The court found that "[r]eading the Indictment as a whole, Defendants [could] reasonably infer how their allegedly obstructive conduct impeded the grand jury or an investigation into their activities." *Id*.

The same is true here. As the government correctly points out, the indictment provides Mr. Saffarinia with notice of the matters and investigations at issue, and it incorporates by

reference the allegations that describe the OGE Forms 278 that
Mr. Saffarinia allegedly falsified when he submitted those forms
to the two agencies—HUD and OGE. *See* Gov't Opp'n, ECF No. 15 at
6. Counts V through VII explicitly set forth the alleged false
statements and a description of each statement in Mr.
Saffarinia's OGE Forms 278 that were submitted on May 12, 2014,
May 16, 2015, and April 26, 2016, respectively. *See* Indictment,
ECF No. 1 at 18 ¶ 78. Furthermore, the government provided Mr.
Saffarinia with "[n]early all of the FBI's investigative case
file, including interview reports, agent notes, and an early
production of *Jencks* material." Gov't Opp'n, ECF No. 15 at 2.
Putting aside the discovery and reverse proffer sessions, the
indictment itself informs Mr. Saffarinia that the three alleged
false statements in the OGE Forms 278 were the matters that HUD,
OGE, and the FBI had jurisdiction to investigate. *See*
Indictment, ECF No. 1 at 18 ¶ 78. The Court therefore finds that
Mr. Saffarinia has sufficient information through discovery "to
permit [him] to conduct his *own* investigation" regarding any
additional information about the matters and investigations at
issue. *Smith,* 776 F.2d at 1111.[6]

---

[6] Mr. Saffarinia relies on *United States v. Jackson*, 926 F. Supp.
2d 691, 717 (E.D.N.C. 2013) for the proposition that an
indictment is deficient if it fails to identify the
investigation or matter that forms the basis of the obstruction
charges. *See* Def.'s Mem., ECF No. 14-1 at 8. *Jackson* is readily
distinguishable from this case. In that case, the court

## C. The Indictment Sufficiently Apprises Mr. Saffarinia of the False Statement Counts

Mr. Saffarinia's other argument—that the government fails to identify the legal duty and governing regulations underlying Count I—is equally unavailing. *See* Def.'s Mem., ECF No. 14-1 at 9-10. A violation under 18 U.S.C. § 1001(a)(1) predicated on concealment, as alleged in the indictment here, requires the government to prove that the defendant had a legal duty to disclose the concealed information. *E.g.*, *United States v. Safavian*, 528 F.3d 957, 964 (D.C. Cir. 2008) ("Concealment cases in this circuit and others have found a duty to disclose material facts on the basis of specific requirements for disclosure of specific information."); *United States v. Calhoon*,

---

dismissed two counts under 18 U.S.C. § 1512 and 18 U.S.C. § 1519, finding that "even considering the allegations in the indictment as a whole, the government ha[d] failed to sufficiently apprise [the defendants] of the [anticipated] investigation and official proceeding they [were] alleged to have obstructed." *Jackson*, 926 F. Supp. 2d at 718. The court found that the defendants were provided with "no details as to the times and places of the [Alcohol, Tobacco, and Firearms] inspection and investigation, and the nature of the matters under inquiry." *Id.* at 719. Unlike in *Jackson*, the government here has provided Mr. Saffarinia with details—the FBI's investigative case file and the witnesses' statements. Gov't Opp'n, ECF No. 15 at 2-3. Counts V through VII provide Mr. Saffarinia with the OGE Forms 278 that he allegedly falsified, the dates when he submitted them, and the agencies that reviewed those forms. *See* Indictment, ECF No. 1 at 18 ¶ 78. In considering the indictment as a whole, it is clear that the matters and the agencies' investigations at issue stemmed from Mr. Saffarinia's alleged failures to disclose all of his payments and loans in the OGE Forms 278, forming the basis of the obstruction allegations. *See id.* at 4-5 ¶ 13; 18 ¶¶ 77-78.

97 F.3d 518, 526 (11th Cir. 1996) ("Falsity through concealment exists where disclosure of the concealed information is required by a statute, government regulation, or form.").

Mr. Saffarinia argues that "the government must prove that [he] had a 'duty to disclose material facts on the basis of specific requirements for disclosure of specific information.'" Def.'s Mem., ECF No. 14-1 at 9 (quoting *Safavian*, 528 F.3d at 964). The government does not dispute this statement of the law. *See* Gov't Opp'n, ECF No. 15 at 7-8; *see also* Def.'s Reply, ECF No. 16 at 4. Rather, the government argues that a "plain reading of the indictment" indicates that Mr. Saffarinia's legal duty to disclose his financial relationship with Person A arose from his position as a high-ranking HUD-OIG official and as an SES member. Gov't Opp'n, ECF No. 15 at 7. The government points out that Mr. Saffarinia's legal duties to disclose derived from his role as the Head of Contracting Activity. *Id.*; *see also* Indictment, ECF No. 1 at 2-3 ¶ 5 (alleging that Mr. Saffarinia had a "legal duty under governing regulations to disclose actual and potential conflicts of interest and to not solicit and accept anything of monetary value").

In *Safavian*, a jury found the defendant guilty of concealing relevant information from: (1) an ethics officer in the course of seeking an ethics opinion; and (2) the General Services Administration in the course of that agency's

investigation. 528 F.3d at 962-63. Specifically, the defendant had requested advice from the ethics officer, but the defendant purportedly failed to provide all the information that would have been relevant to the officer in rendering his opinion. *Id.* at 964. The defendant also purportedly failed to provide complete information to the agency's investigator with whom he voluntarily met. *Id.*

On appeal, the D.C. Circuit reversed the defendant's convictions on the concealment counts, holding that the government had failed to identify a duty to disclose. *Id.* at 965. With respect to the defendant's failure to provide complete information to the ethics officer, the D.C. Circuit noted that it was not clear "how th[e] voluntary system" of seeking ethical advice – which the defendant was ultimately free to follow or disregard – "impose[d] a duty on those seeking ethical advise to disclose . . . 'all relevant information' upon pain of prosecution for violating § 1001(a)(1)." *Id.* at 964. Instead, any duty to disclose must arise from "specific requirements for disclosure of specific information" so that the defendant has "fair notice . . . of what conduct is forbidden." *Id.* (citation omitted). The D.C. Circuit also rejected the government's argument that "once one begins speaking when seeking government action or in response to questioning, one must disclose all relevant facts." *Id.* at 965. Noting that there was no

"regulation or form or statute" that contained such a requirement, the D.C. Circuit made clear that nothing in "[section] 1001 demands that individuals choose between saying everything and saying nothing." *Id.*

Mr. Saffarinia's reliance on *Safavian* is misplaced. The government in *Safavian* argued that the defendant's duty to disclose information was imposed upon him *not* by statute, regulation, or government form, but by "standards of conduct for government employees," which provided fourteen "general principles" of behavior. *Id.* at 964. The D.C. Circuit concluded that those standards were "vague" and that the "ethical principles" embodied in them did not impose a clear duty on an executive employee to disclose information. *Id.* at 964–65. The opposite is true here.

As the indictment makes clear, Mr. Saffarinia's duty to disclose the required information in the OGE Forms 278 is not the result of vague or general principles. *See* Indictment, ECF No. 1 at 4 ¶ 11. Unlike in *Safavian*, this case involves a statute, regulations, and a government form. The statute is the Ethics in Government Act; the regulations are the OGE's regulations, 5 C.F.R. § 2634, *et seq.*; and the government form is the OGE Form 278. *See id.*[7] HUD's website provides that the

---

[7] "The Court takes judicial notice of the official government documents and other sources from [HUD's] government website as

22

Ethics in Government Act "requires senior officials in the executive, legislative, and judicial branches to file public reports of their finances and other interests outside the Government." *Financial Disclosure Reports*, HUD, [https://www.hud.gov/program_offices/general_counsel/Financial_Disclosure_Reports](https://www.hud.gov/program_offices/general_counsel/Financial_Disclosure_Reports) (last visited Oct. 7, 2019). It further provides that certain HUD employees, including SES members, must file the OGE Forms 278. *Id*. The OGE Form 278's instructions direct filers to the Ethics in Government Act and 5 C.F.R. § 2634 to determine what information must be disclosed. *See* OGE Form 278 at 3 § V ("General Instructions"). This form expressly provides that "Title I of the Ethics in Government Act of 1978, as amended (the Act), 5 U.S.C. app. § 101 et seq., and 5 C.F.R. Part 2634 of the [OGE] regulations require the reporting of this information." *Id*. at 11.

Next, Mr. Saffarinia argues that the government fails to identify the "governing regulations" in the indictment. Def.'s Mem., ECF No. 14-1 at 10. To support his argument, Mr. Saffarinia relies on *United States v. Madeoy*, 652 F. Supp. 371,

---

'sources whose accuracy cannot reasonably be questioned.'" *Humane Soc'y of United States v. Animal & Plant Health Inspection Serv.*, 386 F. Supp. 3d 34, 40 n.2 (D.D.C. 2019) (quoting Fed. R. Evid. 201(b)(2)). The OGE Form 278, of which the Court takes judicial notice, is publicly available on HUD's website. *See* OGE Form 278, Executive Branch Personnel Public Financial Disclosure Report, HUD, [https://www.hud.gov/sites/documents/OGE_FORM_278_AUTOMATED.PDF](https://www.hud.gov/sites/documents/OGE_FORM_278_AUTOMATED.PDF).

374 (D.D.C. 1987), but his reliance on that case is also misplaced. In *Madeoy*, the defendants were charged with 121 counts, including conspiracy, racketeering, false statements, and fraud. *Id*. at 374. The indictment referenced "more than 700 pages of the Code of Federal Regulations without specifying which regulations [were] at issue." *Id*. The court held that "[t]here [was] no reason whatever why [those] laws and regulations should not [have been] specified by way of a bill of particulars—a specification which may well [have been] vital to defendants' abilities to answer [the] charges." *Id*. *Madeoy*, however, is factually distinguishable. The holding in that case does not require a bill of particulars in every case where an indictment does not provide a specific citation to a governing regulation. Unlike in the present case, there is no indication whether the government in *Madeoy* provided the defendants with substantial discovery or whether the parties participated in extensive reverse proffer sessions. *See id*. at 380 (granting defendants' motion for pretrial discovery).

It is undisputed that the government has produced voluminous discovery in this case. The indictment expressly refers to Mr. Saffarinia's positions as a high-level HUD-OIG official and the Head of Contracting Activity, as well as his SES membership, which all gave rise to his legal duty to disclose the required information in the OGE Form 278. *See*

Indictment, ECF No. 1 at 2-3 ¶¶ 3-5. The OGE Form 278 itself provides specific information about the reporting requirements. *See* OGE Form 278 at 1 § I ("Scope of Disclosure"). Furthermore, the indictment tracks the language of § 1001(a), and it provides specific information about the three alleged false statements. *See* Indictment, ECF No. 1 at 17 ¶¶ 74-76. The Court therefore finds that the indictment provides Mr. Saffarinia with adequate notice of the charges against him. *See United States v. Cisneros*, 26 F. Supp. 2d 24, 50 (D.D.C. 1998) (denying motion for bill of particulars where "[t]he lengthy [i]ndictment include[d] not only a recitation of the statute but specific information, including the times, places and activities which constitute the unlawful activity").[8]

## IV. Conclusion

For the reasons set forth above, the Court **DENIES** Defendant's Motion for Bill of Particulars. A separate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:     **Emmet G. Sullivan**
            **United States District Judge**
            **October 10, 2019**

---

[8] Having found that Mr. Saffarinia is not entitled to a bill of particulars, the Court need not address the government's argument that Mr. Saffarinia's motion seeks to "lock the government in on its legal theory, well in advance of trial, and obtain a road map or laundry list of the documents and evidence the government intend to introduce at trial." Gov't Opp'n, ECF No. 15 at 9.