IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 1:19-cr-216 (EGS) |
| ) | |
| EGHBAL SAFFARINIA, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION FOR RELEASE OF BRADY MATERIALS**

The United States respectfully submits this response in opposition to the defendant's "Motion for Release of *Brady* Materials." [1]  Dkt. 25.

**I.    BACKGROUND**

On June 25, 2019, a federal grand jury returned a seven-count indictment charging the defendant, a former Assistant Inspector General for the U.S. Department of Housing and Urban Development, Office of Inspector General ("HUD-OIG"), with engaging in a scheme to conceal material facts, making false statements, and falsifying records.  Dkt. 1.   Two days after the defendant's arraignment, this Court, on June 28, 2019, issued its Standing Order on Discovery, outlining the government's obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny.  Specifically, the Court noted the government's obligation to "produce all evidence required by the law and the Federal Rules of Criminal Procedure[,]" and directed the government "to produce to defendant in a timely manner any evidence in its possession that is favorable to defendant and material either to defendant's guilt or punishment[,] to "produce all discoverable evidence in a readily usable form[,]" and, for information that the Government identifies as

---

[1]    The defendant's "motion" filed with the Court is in the form of letter correspondence. For purposes of this response, the government will treat the letter as a formal motion.

favorable to the defendant but does not believe to be material, to "submit such information to the Court for *in camera* review."  Dkt. 11.

Between June 26, 2019, and August 2019, the government made five separate productions to the defendant.  The productions were produced in electronic format and contained data and files in industry-standard, "load ready" format, sent in an organized and navigable digital, and readily usable format.  The productions were each accompanied by production logs with Bates numbers for the documents produced, which detailed the source of the documents or files being produced.  The productions also included .dat files with extensive additional detail about the files, including the metadata detailing the source and filename for all of the files disclosed.

In addition to these productions, the government provided a separate binder of "hot documents" to the defense, which contained relevant e-mails, forms, and records.  The government also explained its theory of the case to defense counsel during two lengthy reverse proffers, one of which was attended by the defendant.  In addition to the roadmap of the government's case provided during those discussions and reverse proffers, the government discussed with the defendant and his counsel the manner in which it intended to prove its case, along with any legal and evidentiary weaknesses and how the government anticipated it would overcome those potential issues.

At a status conference on July 8, 2019, defense counsel told the Court that it was "in the process of working with a vendor to upload all of that material [produced by the Government] to a review platform."  Hrg. Tr. 7/8/2019 at 5.  Nevertheless, defense counsel requested that the Court order the government, "to the extent there is *Brady* information that has been identified,

we just ask that that be sort of specifically identified within the volume of discovery that's been produced." Hrg. Tr. 7/8/2019 at 6.  In response to this request, the following exchange occurred:

> THE COURT:  All right.  Any problems with that, Counsel?
>
> MR. SULLIVAN:  I think, Your Honor, the devil is in the details, though.  When I have had defense attorneys ask for that -- as I just mentioned, we have given them all of the 302s.  We have given them the notes that go with the 302s.  We have given them the subpoena returns.  We have given them, I think, virtually all of the Rule 16 material.  Because it is a very voluminous production, though, I think I am hesitant to say identify all the *Brady* by going through 1.2 million documents. I mean, it is possible we might overlook something, too.  That said, though, we will do our best to identify in 302 reports.  We have also had two reverse proffers in this situation where -- including one about a week or two ago where we spent two hours going through most of our case. We gave them key documents just a moment ago that related to that reverse proffer.  And we have tried to identify exculpatory information with respect to some of the interviews and inculpatory information.
>
> THE COURT: All right. Thank you.

Hrg. Tr. 7/8/2019 at 6.

Although the Court issued no order expanding the expectations beyond what was relayed in its standing discovery order, that same day defense counsel made the same request to the government that it separately identify all *Brady* material.  After the defendant's Motion for a Bill of Particulars was denied on October 11, 2019, defense counsel again made this request.  When the government reiterated the response that it gave during the July, 2019 hearing—that it would continue to work with defense counsel to ensure they are able to make effective use of the extensive and early discovery provided, but that it was not required to provide an inventory or list separately identifying a portion of the material disclosed—the defendant filed his present letter request.  For the reasons stated herein, the motion should be denied.

## II.    ARGUMENT

The defendant asks the Court to order the government "to identify any exculpatory information it knows or, or should know of, within its production."  Dkt. 25 at 4.  Although the

-3-

defendant does not articulate what format he anticipates such an identification would take, he appears to seek a separate log of material that the government believes may aid in preparation of the defense. The defendant loosely titles his request as one for "*Brady* Material," but the request is written such that it appears to be a request for identification and summary of material that could be used for impeachment under *Giglio v. United States*, 405 U.S. 150 (1972), as well.

Respectfully, there is no support for such a request, nor is there justification to expand the government's discovery obligations beyond what this Court has already articulated in its Standing Order, which the government has and continues to comply with in good faith. *See United States v. Bagley*, 473 U.S. 667, 675 (1985) ("Thus, the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial.").

The defendant cites this Court's decision in *United States v. Hsia*, 24 F. Supp. 2d 14, 29 (D.D.C. 1998) in support of his request. He claims that the Court there "held" that the government must identify *Brady* material within its discovery to the extent that it knows of any such documents or statements. Dkt. 25 at 2. But this misrepresents the Court's actual holding in that case. In *Hsia*, the defendant claimed "that she has received literally no *Brady* material from the government." 24 F. Supp. 2d at 29. The Court then "set out several basic propositions of *Brady* jurisprudence" and "general warnings" to the prosecution team detailing its discovery obligations under applicable law, including *Brady*. *Hsia*, 24 F. Supp. 2d at 30. But the Court then held that "it is not the court's role to 'referee . . . disagreements about materiality and supervise the exchange of information.'" *Id*. (citing *United States v. McVeigh,* 954 F. Supp. 1441, 1451 (D. Colo. 1997)). The court went on to "accept the government's representation that

-4-

it will immediately disclose any and all *Brady* material that it has, or discovers that it has, in its possession," and issued no additional discovery order. *Hsia*, 24 F. Supp. 2d at 30.

The defendant also relies on *United States v. Blankenship*, No. 5:14-CR-00244, 2015 WL 3687864 (S.D.W. Va. June 12, 2015) in support of his request. Dkt. 25 at 2. There, the Court did order the government to separately identify *Brady* material, but the circumstances of that order were exceptional and distinguishable from those in this case. In *Blankenship*, the government had not identified the documents that were to be introduced at trial as exhibits, portions of the discovery that the government produced did not contain metadata that was easily searchable, the government had not provided notes of witness interviews, and had not provided statements from attorney proffers made to the government by counsel for witnesses. *Blankenship*, 2015 WL 3687864, at *5-6. The court cited each of these shortcomings in the government's discovery as grounds for ordering the government to separately identify *Brady* material to the defendant. *Id*. None of these shortcomings have been identified by defense counsel in this case.

As the court in *United States v. Skilling* noted, in cases with voluminous case files, requests like the defendant's "seem to turn on what the government does in addition to allowing access to a voluminous open file." *United States v. Skilling*, 554 F.3d 529, 577 (5th Cir. 2009), *aff'd in part, vacated in part, and remanded*, 561 U.S. 358 (2010). In *Skilling*, the Fifth Circuit found that the government had met its obligations where it produced a file that was electronic and searchable; produced a set of 'hot documents' that it thought were important to its case or potentially relevant to the defense; created indices to these and other documents; and provided access to various databases concerning prior relevant litigation. *Id*.

Here, like in *Skilling*, the government has done more than simply allow access to a voluminous open file.  The government has produced logs and indices identifying the source and subject matter of the documents produced.  It has produced the investigative case files (containing the 302s and the MOIs) in sequence and not in some haphazard manner.  The government has also provided the defendant with binders of "hot documents" used during a reverse proffer session that outlines the government's case.  During two reverse proffer sessions, the government has discussed with the defense both the inculpatory material and the possible legal and evidentiary weaknesses in the government's case.  The government has provided all of the 302s and MOIs produced by the investigative agencies detailing witness interviews, and has included agent notes for those interviews.  Additionally, the government's discovery has been produced in digital, load-ready, readily searchable format, and .dat files containing the metadata for those digital files has been produced to accompany the discovery, making those records readily searchable by digital and electronic means.

In short, the government has taken all of the steps outlined in *Skilling*, and has suffered none of the discovery production shortfalls described in *Blankenship*.  Further, as in *Skilling*, the defendant has not alleged, nor is the government aware of "something exculpatory" in the case file that it has hidden with the hope that defendant will not find it.  *Id*.

The defendant argues that he is not asking for special treatment in this case, but he also acknowledges the extensive case law in which courts have denied requests like this for the government to specifically identify *Brady* material within voluminous productions.  Dkt. 25 at 3, n.4 (citing *United States v. W.R. Grace*, 401 F. Supp. 2d 1069, 1080 (D. Mont. 2005); *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 825 F. Supp. 2d 451, 457 (S.D.N.Y. 2011); *United States v. Mmahat*, 106 F.3d 89, 94 (5th Cir. 1997), *abrogated by United States v. Estate*

*of Parsons*, 367 F.3d 409 (5th Cir. 2004)).² Despite the defendant's dismissal of these cases, each of them—and indeed the cases cited by the defendant in support of his position, including *Hsia*, and *Skilling*—dictate that, in situations like this where there are no exceptional circumstances that would warrant the expansion of the government's disclosure obligations beyond what is required under applicable law, such an order is inappropriate.

Under the circumstances outlined here, the government has and will continue to fully meet its obligations under applicable authority, including *Brady* and its progeny. The government remains aware of its obligations under applicable case law, and cognizant of the Court's Standing Order on Discovery, and will continue to comply with these obligations.

///

---

² In addition to the cases cited by the defendant, the Government has identified no less than a dozen cases addressing similar situations where courts have declined to order the Government to separately identify as *Brady* material a subset of its discovery, including numerous published opinions from different circuit courts. *See, e.g., United States v. Runyan*, 290 F.3d 223, 246 (5th Cir.2002) (*Brady* does not require the government "to facilitate the compilation of exculpatory material that, with some industry, defense counsel could marshal on their own."); *United States v. Stanford*, 805 F.3d 557 (5th Cir. 2015) (rejecting claim of *Brady* violation where defendant argued that the "sheer quantity of dumped data could not be fully assessed by the Defense" where the government provided defense with electronic and searchable database of records); *United States v. Richards*, 659 F.3d 527 (6th Cir. 2011) (finding no discovery violation where government provided electronic images "in a flexible digital format, Microsoft Excel, and included the corresponding file path and file source for each identified file"); *United States v. Gray*, 648 F.3d 562 (7th Cir. 2011) (rejecting claim that government violated *Brady* by failing to extract data from mass of electronic information that would support defense theory, finding that "the government is not 'obliged to sift fastidiously' through millions of pages (whether paper or electronic)" (citing *United States v. Warshak,*631 F.3d 266, 297 (6th Cir.2010)); *United States v. Jordan*, 316 F.3d 1215, 1254-54 (11th Cir. 2003) (finding that Government was not obligated to search the discovered materials for exculpatory material); *Duke v. Pappas*, 405 Fed.Appx. 666 (3d Cir. 2010) (finding that "*Brady* does not require the government to facilitate the compilation of exculpatory material that, with some industry, defense counsel could marshal on their own").

## **CONCLUSION**

For the foregoing reasons, the government respectfully submits that the Court should deny the defendant's motion.

                              Respectfully submitted,

                              Corey R. Amundson
                              Chief, Public Integrity Section

By:    ___/s/Rosaleen O'Gara_____
           Edward P. Sullivan
           Rosaleen T. O'Gara
           Trial Attorneys
           Public Integrity Section

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for the defendant.

                                          ___/s/ Rosaleen O'Gara _____
                                          Rosaleen O'Gara

Dated: October 15, 2019