IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 19-cr-216 (EGS) |
| | ) | |
| EGHBAL SAFFARINIA | ) | |
| (a/k/a "EDDIE SAFFARINIA"), | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
TO EXCLUDE ADDITIONAL "OTHER ACTS" EVIDENCE**

On June 7, 2021, the United States sent a letter to the defendant describing evidence of

other acts and misconduct that the government might offer at trial pursuant to Federal Rule of

Evidence 404(b) and the "inextricably intertwined" doctrine ("June 7 letter").   The defendant

has filed a motion to exclude the evidence described in the government's letter, and further

claims that the government's notice is deficient.   ECF No. 82.   The defendant's motion should

be denied for the following reasons.

I.   **Background**

The superseding indictment charges the defendant with engaging in a scheme to conceal

material facts, making false statements, and falsification of records.   ECF No. 74.   As described

in Count 1, the government intends to prove at trial that, beginning no later than mid-2013 and

continuing until at least mid-2016, the defendant engaged in a multi-year scheme to falsify,

conceal, or cover up payments and loans from Person A to the defendant totaling at least $80,000

during a period in which the defendant steered lucrative information-technology contracts to

Person A's company; the defendant had a legal duty to disclose any liability greater than

$10,000; and the defendant acted knowingly and willfully in his efforts to conceal and cover up

the liabilities.   *Id.* ¶ 16.   Counts 2 through 4 charge the defendant with a series of false

statements based on his failure to disclose the $80,000 in loans from Person A, as well as $90,000 in loans he received from his neighbor pursuant to a 2015 promissory note, on mandatory government ethics forms that he filed in 2014, 2015, and 2016.  *Id.* ¶ 63.   Counts 5 through 7 charge the defendant with falsification of records based on those filings.  *Id.* ¶ 65.

As relevant here, the superseding indictment alleges that, from July 2013 through November 2013, Person A provided the defendant with eight separate personal checks totaling $80,000.   ECF No. 74 ¶ 24.   Person A made these payments pursuant to a September 2013 promissory note in which Person A agreed to loan $80,000 to the defendant.  *Id.* ¶ 25.   All counts incorporated the allegation that the defendant and Person A had been friends for decades and that, for a number of years, and during periods when the defendant had financial difficulties, Person A provided substantial payments and loans to the defendant, including, but not limited to, the $80,000 in payments pursuant to the September 2013 promissory note.  *Id.* ¶¶ 8, 15, 61, 64. Furthermore, the indictment alleges that, between November 2013 and April 2014, the defendant's relatives used a foreign bank account to transfer funds substantially less than $80,000 to a foreign bank account maintained by Person A's relatives, while the defendant made no contemporaneous payments on the $80,000 promissory note in the United States.  *Id.* ¶ 26.

The June 7 letter provided notice that the government may introduce at trial evidence indicating that an ongoing, multi-year financial relationship existed between the defendant and Person A.   ECF No. 82-3.   Specifically, the government described that, between approximately 2007 and 2014, Person A and the defendant engaged in personal financial transactions totaling at least $200,000 as part of an ongoing financial relationship in which Person A gave money to the defendant in the United States due to the defendant's severe financial difficulties.  *Id.*   The government further described that the defendant would then contact his family in Iran and instruct them to pay Person A's family in Tehran through an Iranian bank account.  *Id.*   The

government posited that the evidence was admissible at trial because it is intrinsic to the offenses charged in the indictment or, alternatively, was admissible under Rule 404(b) because it will demonstrate the defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident with respect to the charged conduct.   *Id.*

## II.   <u>Argument</u>

### A.   <u>The Government's 404(b) Notice Is Sufficient</u>

As a preliminary matter, the defendant claims that the government's June 7 letter failed to provide "'reasonable notice' of the evidence the government intends to offer."   ECF No. 82-1 at 2 (quoting Fed. R. Evid. 404(b)(3)(A)).   The defendant's argument parrots the same complaint he made in a pending motion regarding the government's December 16, 2019, letter that provided notice of other potential intrinsic and 404(b) evidence the government plans to introduce at trial.   *See* ECF No. 50-1 at 3-5.   The defendant's notice argument is equally unmeritorious here for the reasons already set forth in the government's response to ECF No. 50. *See* ECF No. 53 at 2-5.   Therefore, we will only briefly readdress the defendant's arguments here.

The defendant complains that the June 7 letter "does not identify the specific non-propensity purpose for which it intends to offer the evidence and is completely devoid of any reasoning to support that purpose."   ECF No. 82-1 at 3.   That is incorrect.   The June 7 letter identified several specific theories of admissibility regarding the proffered evidence, including that it is intrinsic to the offenses charged in the indictment and, alternatively, is admissible for numerous valid reasons set forth in Rule 404(b)(2).   That is more than sufficient to meet the requirement that "the government need only describe the 'general nature' of the evidence it intends to introduce."   *United States v. Watt*, 911 F. Supp. 538, 556 (D.D.C. 1995) (quoting Fed. R. Evid. 404(b)).

The defendant primarily relies on *United States v. Kendall*, 766 F.2d 1426 (10th Cir. 1985), to argue that Rule 404(b)'s notice requirement mandates more specificity.   ECF No. 82-1 at 3.   But, as the defendant himself acknowledged in his first 404(b) motion, *see* ECF No. 50-1 at 4 n.2, this out-of-circuit decision addressed the admissibility of 404(b) evidence *at trial*; it did not interpret the Rule's pre-trial notice requirement.   *Kendall*, 766 F.2d at 1435-37; *see also United States v. Birch*, 39 F.3d 1089, 1094 (10th Cir. 1994) (citing *Kendall* while addressing whether 404(b) evidence was properly admitted at trial).   In fact, in *Kendall* the Tenth Circuit *rejected* the defendant's request for pre-trial disclosure of the government's Rule 404(b) evidence, noting that the defendant's "vague and broad claim of unfairness and prejudice is not supported by any showing of how pretrial disclosure of Rule 404(b) evidence could have influenced the conduct at trial."   *Kendall*, 766 F.2d at 1441.

Similarly here, the defendant makes no claim that he was previously unaware of the evidence that the government identified in the June 7 letter.   Nor could he credibly make such a claim given the breadth and specificity of discovery in this case and the particular attention that the ongoing financial relationship between the defendant and Person A has received throughout the course of this matter, including during a factual proffer the government gave the defendant, a binder of key documents the government delivered to the defendant, and in court filings.   The detailed factual descriptions of the evidence contained in these documents sufficiently sets forth the government's reasoning for its admission.   As noted above and in the government response to the defendant's first 404(b) motion, numerous courts in this jurisdiction and elsewhere have routinely denied requests by defendants for greater particularity in Rule 404(b) notices.   *See* ECF No. 53 at 3-4 & n.1.   The same result is appropriate here.

Even assuming *arguendo* that Rule 404(b) could be read to require greater specificity as to the reasoning for the admission of the evidence, this pleading describes that reasoning in detail below.   This response thereby supplements the government's notice contained in the June 7 letter and cures any potential defect.

**B.**     **Evidence Regarding the Ongoing Financial Relationship Between Person A and the Defendant Is Admissible**

**1.**     **The Evidence Is Intrinsic to the Offenses Charged in the Indictment**

When evidence "is 'intrinsic' to the charged crime, it is not evidence of 'other' acts and is thus wholly unregulated by Rule 404(b)."   *United States v. Moore*, 651 F.3d 30, 63 (D.C. Cir. 2011).   "'Intrinsic' evidence encompasses evidence that is either 'of an act that is part of the charged offense' or is of 'acts performed contemporaneously with the charged crime . . . if they facilitate the commission of the charged crime.'"   *Id.* (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)).   As noted above, each count of the superseding indictment specifically incorporated the allegation that "[f]or a number of years, and during the periods when SAFFRINIA had financial difficulties, Person A provided substantial payments and loans to SAFFARINIA including $80,000 in payments pursuant to a promissory note executed in 2013."   ECF No. 74 ¶¶ 8, 15, 61, 64.

Beyond the fact that the evidence proffered in the June 7 letter is already referenced in the superseding indictment, evidence of the defendant and Person A's ongoing financial relationship is intrinsic because the larger series of transactions between these two individuals shows the genesis of the arrangement that resulted in the charged offenses.   Courts have repeatedly held that evidence is intrinsic if it demonstrates "the circumstances surrounding the offense."   *United States v. Allen*, 960 F.2d 1055, 1058 (D.C. Cir. 1992); *see United States v. Badru*, 97 F.3d 1471, 1474 (D.C. Cir. 1996) (in case charging defendants with smuggling heroin

out of Nigeria in 1993, holding that the defendants' trips to Nigeria in 1992 were intrinsic to the charged 1993 conduct "[g]iven the similar modus operandi between the couriers' previous trips to Nigeria and the planning and execution of the trip that ended in April 1993"); *United States v. Rice*, 607 F.3d 133, 141 (5th Cir. 2010) (evidence that is intrinsic to the crime charged is admissible to "complete the story of the crime by proving the immediate context of events in time and place") (citation and internal quotation marks omitted).

In this case, the defendant is charged with willfully failing a legal duty to disclose $80,000 that he received from Person A pursuant to a promissory note executed in 2013.   The government has further alleged that the defendant concealed his indebtedness to Person A because the payments were part of a larger symbiotic relationship.   *See* ECF No. 74 ¶¶ 17-21. As described in the June 7 letter, the government seeks to admit evidence that the $80,000 in loans and payments extended by Person A in 2013 were part of larger series of payments totaling over $200,000.   Critically, these other transactions followed a pattern substantially similar to the transactions underlying the criminal counts in that they involved payments from Person A to the defendant in the United States and use of the defendant's and Person A's family members and banks in Iran to facilitate reimbursement.   Evidence regarding how the defendant structured his financial relationship with Person A over the course of many years directly implicates the jury's understanding of the nature and origin of the defendant's scheme to conceal the 2013 payments and the relationships between the key players.   Therefore, it should be admitted as intrinsic to the charged offenses.

## 2.    Alternatively, the Evidence Is Admissible Pursuant to Rule 404(b)

Even if the Court does not find that the evidence proffered in the June 7 letter is intrinsic to the charged offenses, it is admissible for several valid, non-propensity purposes pursuant to Rule 404(b).   Specifically, this evidence is admissible to show motive, opportunity, intent,

preparation, plan, knowledge, identity, absence of mistake, and lack of accident.   *See* Fed. R.
Evid. 404(b)(2).

Evidence concerning the defendant's ongoing financial relationship with Person A is
plainly relevant to demonstrating the defendant's motive for concealing from his government
employer the $80,000 in loans that Person A had given him at the same time that the defendant
was considering Person A for the information technology contracts.   "Establishing motive has
long been recognized as a permissible purpose for the introduction of 'other crimes' evidence."
*United States v. McGill*, 815 F.3d 846, 883 (D.C. Cir. 2016).   Both the $80,000 loan and other
payments the defendant received from Person A, including ones that predated the defendant's
employment with HUD-OIG, gave rise to "an actual and apparent conflict of interest in
overseeing government business in which Person A and Company A had a significant financial
interest."   ECF No. 74 ¶ 17.   The defendant's substantial indebtedness to Person A and reliance
on his financial support over money years gave the defendant a powerful motive to avoid
drawing any attention to his relationship with Person A.   That is particularly true given the
authority that the defendant had to provide Person A's company with a lucrative government
contract and the clear conflict of interest their financial entanglements created.   Thus, the full
range of the defendant's financial relationship with Person A is relevant to the defendant's
motive for concealing the $80,000 in loans.

Likewise, the fact that Person A had provided the defendant with numerous other
payments and loans besides the $80,000 is evidence that the defendant must have known about
the $80,000 he received in 2013 and that his identity as a participant in the transactions is
indisputable.   The evidence of the repeated financial interactions between the defendant and
Person A over the course of several years also demonstrates that the defendant did not make a
mistake when he failed to disclose the 2013 liabilities over the course of multiple years, that his

failure to disclose them was not an accident, and that he intended to conceal the loans from the government.   Moreover, coupled with the defendant's other efforts to conceal his relationship with Person A while he was steering government contracts to Person A, their continuous financial relationship and their consistent involvement of family members in Iran to perpetuate the pattern of transactions is evidence of the defendant's preparation and plan for the concealment of the $80,000 in loans with which he is charged.   The fact that many of the transactions occurred in Iran, shielding their occurrence from the American banking system, also enhanced the defendant's opportunity to conceal them from the U.S. government.   Any one of these justifications is sufficient to establish the admissibility of the evidence proffered in the June 7 letter.   All of them are applicable here.

> **3.** **The Evidence's Probative Value Is Not Substantially Outweighed by the Danger of Unfairly Prejudice Under Rule 403**

Finally, the defendant argues that, even if the evidence is relevant and admissible, "[a]ny proper relevance this evidence has is far outweighed by the risks of undue prejudice, wasting time, and confusing the issues."   ECF No. 82-1 at 5.   Again, the defendant recycles the same arguments that he made in his first Rule 404(b) motion regarding evidence of the defendant's tax violations and financial transactions in Iran.   *See* ECF No. 50-1 at 8-9, 12-14.   The government has already responded to these arguments, *see* ECF No. 53 at 5-11, and therefore will only briefly readdress them here.

Evidence regarding the ongoing financial relationship between the defendant and Person A is highly probative of the charges included in the superseding indictment and does not give rise to any improper prejudice.   "Rule 403 does not bar powerful, or even 'prejudicial' evidence. Instead, the Rule focuses on the 'danger of *unfair* prejudice,' and gives the court discretion to exclude evidence only if that danger '*substantially* outweigh[s]' the evidence's probative value."

*United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) (quoting Fed. R. Evid. 403)

(citation and internal quotation marks omitted).   As described above, the evidence proffered in

the June 7 letter is highly probative for numerous non-propensity purposes under Rule 404(b).

On the other hand, the defendant's only claim of potential unfair prejudice is that the

combination of presenting years' worth of financial transactions between the defendant and

Person A and the fact that some of those transactions took place in Iran will "invite the jury to

conclude that [the defendant] should be convicted based on a supposed 'tendency or propensity

to engage in criminality.'"   ECF No. 82-1 at 6 (quoting *McGill*, 815 F.3d at 878).   This

speculative claim does not hold water.   As the government has already stated, *see* ECF No. 53 at

10, the government does not anticipate presenting evidence that the defendant and Person A's

transactions resulted in criminal violations of the Iranian Transactions Regulations.   Rather,

evidence that the defendant structured his financial relationship with Person A in a manner that

included foreign transactions over the course of many years between the families of the

defendant and Person A is direct evidence of the defendant's knowing and willful efforts to

conceal from the government $80,000 in loans in 2013 that he and Person A structured in a

similar manner.

Contrary to the defendant's claim that presenting this evidence would confuse the jury

and waste its time, ECF No. 82-1 at 7, an inability to present to the jury the financial history

between Person A and the defendant would likely lead the jury to be confused and unsure about

numerous critical aspects of why the defendant failed to disclose the $80,000 in loans on the

government forms.   That would increase the likelihood that the jurors would fill the gaps in the

evidence with their own impermissible inferences, or assume inaccurately that the $80,000

promissory note was an isolated event that could have been overlooked by the defendant as he

filled out his government disclosure forms.   Indeed, based on the defendant's discovery requests

and pleadings, it appears he is angling to argue that his failure to disclose the loans from Person A was an unintentional mistake.   The jury should be permitted to hear evidence showing that the defendant did not merely fail to report a single promissory note in isolation.   Rather, the evidence of the defendant's ongoing financial relationship with Person A shows that the defendant intentionally lied to the government to avoid the unraveling of a complex and longstanding financial lifeline for him that posed a serious conflict of interest.

In sum, the defendant's request that the Court preclude this evidence would deprive the jury of important evidence regarding the defendant's identity as a party involved in the $80,000 in loans, his intent to conceal them, and his knowledge that his failure to disclose them was unlawful.   The evidence is also relevant to show the defendant's motive for his materially deceptive actions, his lack of mistake and intention to conceal the payments from the government, and his preparation, plan, and opportunity for accomplishing that concealment.

## III.    <u>Conclusion</u>

For the foregoing reasons, the United States requests that this Court deny the defendant's

motion to exclude evidence that is intrinsic to the charged crimes or is admissible extrinsic

evidence.

Respectfully submitted,

Corey R. Amundson
Chief, Public Integrity Section

By:     _/s/   John P. Taddei_____
Edward P. Sullivan
Senior Litigation Counsel
Rosaleen T. O'Gara
John P. Taddei
Trial Attorneys
U.S. Department of Justice
Criminal Division, Public Integrity Section
1301 New York Ave., N.W.
Washington, D.C. 20530
Tel: 202-514-1412
Fax: 202-514-3003
Edward.Sullivan@usdoj.gov
Rosaleen.O'Gara2@usdoj.gov
John.Taddei@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for the defendant.

_____
Edward P. Sullivan

Dated:   July 8, 2021